COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


BARBARA W. JOHNSON
                                              OPINION BY
v.    Record No. 1772-98-2          JUDGE JAMES W. BENTON, JR.
                                             JUNE 29, 1999
VIRGINIA RETIREMENT SYSTEM


              FROM THE CIRCUIT COURT OF LANCASTER COUNTY
                    Joseph E. Spruill, Jr., Judge

              Sean P. Kavanagh (Jenkins, Block &
              Associates, P.C., on briefs), for appellant.

              Brian J. Goodman, Assistant Attorney General
              (Mark L. Earley, Attorney General, on brief),
              for appellee.


     The Virginia Retirement System denied Barbara W. Johnson's

application for disability benefits.  On this appeal from the

circuit court's review, Johnson contends the trial judge erred in

ruling that the record contains substantial evidence to support

the Retirement System's decision.  See Code § 9-6.14:17.  For the

reasons that follow, we affirm the judgment.

                                I.

     For nineteen years, Barbara W. Johnson was employed as an

elementary school teacher by the Lancaster County School Board.

She resigned from her position in July 1996 and applied to the

Retirement System for regular disability retirement benefits.  See

Code § 51.1-156.  Johnson's application indicated she suffered

from hypertension and related medical problems that became aggravated when she was in the classroom.  Attached to her application was a report from Dr. Norman R. Tingle, Jr., her physician, which indicated the following:

> [Johnson] remains relatively anxious and hypertensive, but is doing pretty well on her medications. . . .  She plans not to go back to work.  I recommend that.  I think it is too stressful.  Her blood pressure is clearly made worse by the stress at work.  In that regard, she is applying for early disability and I have completed a note today suggesting that she go ahead and early retire.

Denying the application, the Retirement System informed Johnson that the medical board had reviewed the application and recommended denying it.  See Code § 51.1-124.23.  The medical board noted, "[t]here is no evidence of end-organ impairment from her hypertension . . . and generally in such cases, more focused treatment of the blood pressure gives control."  Johnson appealed the decision and submitted additional evidence, including a chart of her blood pressure readings for eighteen months and a letter from Dr. Tingle.  In his letter, Dr. Tingle disclosed the medication Johnson was taking and stated, "her blood pressure is stable now, but she is not working and I recommended that she not do that."  The medical board requested that Johnson submit to an independent medical examination by Dr. Kenneth C. Griffith, a cardiovascular specialist, and sent Dr.

Griffith a copy of the records it had received from Johnson and Dr. Tingle.

After examining Johnson, Dr. Griffith reported to the medical board that Johnson has "poorly controlled" blood pressure and "has been treated with several different agents but apparently has been treated one at a time and never in combination." While noting that the "documentation as to the medical regimen which [Johnson] has been under is somewhat limited," Dr. Griffith's report contained references to Johnson's current medication, "Johnson's own account" of her medicines, and Dr. Tingle's letter noting the types of medication he had prescribed. In concluding his lengthy report, Dr. Griffith stated the following disposition:

> I am not quite certain why this lady takes Codeine twice a day and I am not quite certain if she has any reason for suspecting that her symptomatology is related to her hypertension. She seems to have a lot of symptoms that are much more likely to be anxiety symptoms than hypertensive. She has uncontrolled hypertension but I do not think it has been at all demonstrated that she has ever been on a regimen of medications which might reasonably be suspected to control difficult hypertension. It may well be that she has a disabling anxiety condition, it may be that she potentially has disabling hypertension if it were demonstrated that the patient's current level of pressure was the best that could be attained by multi-drug therapy, but as of the present moment I do not see that in my professional opinion that disabling hypertension has been demonstrated.

On December 2, 1996, the Retirement System again denied Johnson's application. It informed Johnson that, after reviewing Dr. Griffith's report, the medical board recommended denying the application because Johnson had not proved a "permanently disabling illness." Johnson then submitted further, more current medical reports from Dr. Tingle, who noted Johnson's continuing elevated blood pressure, described the medication she was receiving, and reported that she had been examined by Dr. Anthony Giordano because of hearing problems she was experiencing. On December 18, 1996, the Retirement System denied Johnson's further application. Although Johnson's "single antihypertensive medication has been increased," the medical board found, "[t]here is still no evidence with the use of approved methods of treating blood pressure, including multiple drugs, that her blood pressure cannot be quite satisfactorily controlled" and "[t]here is still no evidence of permanent disability from hypertension."

Johnson requested a fact finding hearing, see Code § 9-6:14.12, and informed the Retirement System that she had "a new doctor." Johnson also supplied additional records from Dr. Tingle, Dr. Giordano, Dr. John Deschamps, an internist, and Dr. William G. Ryan, an optometrist. At the hearing, Johnson testified extensively concerning her difficulties at school and at home. The notes from Dr. Tingle reported that on January 21, 1997, he increased Johnson's medication for hypertension and

that her blood pressure had decreased when she returned two weeks later. Dr. Deschamps reported that on his examination of March 24, 1997, Johnson said she had experienced blood pressure problems "for at least seven years," and he noted the various medicines she had taken. He diagnosed hypertension and "anxiety with some stress component," and he "streamline[d]" Johnson's medications. When Johnson returned to Dr. Deschamps two weeks later, he noted that her blood pressure "is much better controlled." However, Dr. Deschamps' medical report stated that Johnson's "feeling is that she can no longer effectively teach her classes" and that he "do[es] not foresee her being able to continue her work as a teacher because of the responsibility that that requires."

In its review of the doctors' reports, the medical board noted that "Dr. Deschamps indicate[s] that [Johnson's] pressure was eventually satisfactorily controlled with the recording 130/80," that Dr. Ryan reports Johnson's "vision is corrected at 20/20 in each eye with lenses," and that Dr. Giordano reports Johnson needs no further treatment for her hearing problem. The medical board concluded that Johnson's "hypertension is now satisfactorily controlled" and that "[t]here is no evidence of a permanently disabling condition."

Based on his review of Johnson's testimony and the medical evidence, the hearing officer found that Johnson did not fully satisfy the statutory requirements of Code § 51.1-156. Noting

the report from Dr. Deschamps, which established that under his medication regimen Johnson's blood pressure is now "better controlled," the hearing officer found that Johnson had not established a permanent disabling condition.  The hearing officer further stated the following:

> While Ms. Johnson may not be ready to resume the responsibility of a teacher at this time and has shown as much, she has not satisfied the requirement of the code that her condition is likely to be permanent. Hypertension is permanent, but it may be controlled.

Upon review of the hearing officer's decision, the Retirement System informed Johnson that "[t]he medical evidence has not proved that your incapacity is 'likely to be permanent'" and denied her application for disability benefits.

On appeal to the circuit court, Johnson contended that the "findings of fact . . . are not based upon substantial evidence" and that she had sufficiently demonstrated permanent physical incapacity from work.  Finding that the "record contains conflicting medical testimony from reputable physicians," the trial judge ruled he "cannot conclude . . . it would be necessarily unreasonable to accept the opinion of one to the exclusion of the others."  Basing his decision upon the "substantial evidence" standard, the trial judge affirmed the agency's decision.  This appeal followed.

II.

The standard of review applicable to this appeal is governed by the Administrative Process Act. See Code § 9-6.14:17. Applying the Act, we have ruled as follows:

> In reviewing an agency decision, "[t]he scope of court review of a litigated issue under the APA is limited to determination [of] whether there was substantial evidence in the agency record to support the decision." The substantial evidence standard is "designed to give great stability and finality to the fact-findings of an administrative agency." A trial court may reject the findings of fact "only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." The burden of proof rests upon the party challenging the agency determination to show that there was not substantial evidence in the record to support it.

Smith v. Dept. of Mines, Minerals & Energy, 28 Va. App. 677, 684-85, 508 S.E.2d 342, 346 (1998) (citations omitted). See also Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983). Although "[s]ubstantial evidence is more than a mere scintilla," Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (cited in Bias, 226 Va. at 269, 308 S.E.2d at 125), we have held, nonetheless, that this standard of review requires courts to give great deference to the agency's factual findings.

> The determination of an issue of fact is to be made solely on the basis of the whole evidentiary record provided by the agency and the reviewing court is limited to that agency record. "A reviewing court may not,

however, use its review of an agency's procedures as a pretext for substituting its judgment for the agency on factual issues decided by the agency." A reviewing court "must review the facts in the light most favorable to sustaining the [agency's] action," and "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted."

Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 263, 369 S.E.2d 1, 18-19 (1988) (citations omitted).

Based on the medical evidence in this record, a "reasonable mind" certainly could find that the evidence did not prove Johnson's condition was likely to be permanent. The record contains a report from Dr. Griffith noting that Johnson had been given an insufficient medical regimen for controlling hypertension. Indeed, when Johnson began treatments with Dr. Deschamps, he adjusted her medication and reported "her [blood pressure] is much better controlled at 130/80."

By statute, the medical board is empowered to review reports of medical examinations, to investigate health and medical statements submitted in connection with disability applications, and to report its conclusions and recommendations to VRS. See Code § 51.1-124.23(B). The medical board examined all of the medical reports, see Code § 51.1-156(E), including the reports of Drs. Tingle, Deschamps, and Griffith, and found persuasive the opinion of Dr. Griffith. The hearing officer received the medical board's recommendations and likewise found

unpersuasive medical reports of Johnson's permanent incapacity. The Retirement System upheld that finding.

The trial judge noted that "[t]his record contains conflicting medical testimony from reputable physicians" and ruled that he "cannot conclude that it would be necessarily unreasonable to accept the opinion of one to the exclusion of the others." In other agency cases, we have ruled that "'[a] question raised by conflicting medical opinion is a question of fact.'" WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997) (citation omitted). We have also observed that "[t]he deference that we give to the [agency's] fact finding on medical questions is based upon the 'unwisdom of an attempt by . . . [courts] uninitiated into the mysteries [of the medical science debate] to choose between conflicting expert medical opinions.'" Stancill v. Ford Motor Co., 15 Va. App. 54, 58, 421 S.E.2d 872, 874 (1992) (citation omitted). Those principles are applicable in the context of this case. Accordingly, we affirm the trial judge's ruling.

### III.

Relying on the "treating physician rule" in federal disability cases, see e.g., Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) and 20 C.F.R. § 404.1527(d)(2), Johnson additionally argues that the Retirement System should be required to give greater weight to Dr. Tingle's report.

We find no basis in Code § 9-6.14.17 to require the Retirement System to adopt such a rule.  By statute, the Retirement System is required to "employ a Medical Board of four physicians[,] who [serve four-year terms and] are not eligible to participate in the Retirement System," to review the medical reports and make recommendations to the Retirement System.  Code § 51.1-124.23.  Thus, the legislature has designated in the basic law a neutral evaluatory mechanism for the Retirement System to gather and analyze medical opinions and reports.

Furthermore, we note that even if such a rule were in place, the result in this case would be no different.  The Supreme Court applies the following rule in Workers' Compensation cases where there is conflicting medical evidence:

> The general rule is that when an attending physician is positive in his diagnosis of a disease, great weight will be given by the courts to his opinion.  However, when it appears . . . that the diagnosis is shaded by doubt, and there is medical expert opinion contrary to the opinion of the attending physician, then the trier of the fact is left free to adopt that view which is most consistent with reason and justice.

Bristol Builders' Supply Co. v. McReynolds, 157 Va. 468, 471, 162 S.E. 8, 9 (1932).

The record in this case contains conflicting medical opinions on the issue of whether Johnson "has ever been on a regimen of medications which might reasonably . . . control difficult hypertension."  The hearing officer found Dr.

Griffith's opinion to be more credible.  Furthermore, the most recent reports from Johnson's physicians demonstrate that her blood pressure was being controlled.  Relying upon the recommendations of the medical board and the hearing officer, the Retirement System found that Johnson had failed to establish that her incapacity is "likely to be permanent," Code § 51.1-156(E), and denied Johnson's claim.  Substantial evidence in the record supports that finding.  Accordingly, we affirm the judgment.

<u>Affirmed</u>.