COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, O'Brien and Malveaux
Argued at Richmond, Virginia


MICKEY L. RHOADES

v.      Record No. 2104-17-2

VIRGINIA RETIREMENT SYSTEM

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
DECEMBER 18, 2018


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Joi J. Taylor, Judge

Bruce K. Billman for appellant.

Brian J. Goodman, Legal Affairs & Compliance Coordinator,
Virginia Retirement System (Mark R. Herring, Attorney General;
Stephen A. Cobb, Deputy Attorney General; Heather Hays
Lockerman, Senior Assistant Attorney General/Section Chief, on
brief), for appellee.


Mickey L. Rhoades appeals a decision of the Circuit Court of the City of Richmond

affirming the final case decision of the Virginia Retirement System ("VRS") denying her claim for

disability retirement benefits. She contends the circuit court erred in ruling that the denial by VRS

was supported by substantial evidence. We affirm the decision.

I.  BACKGROUND

"We view the evidence in the light most favorable to VRS, the prevailing party below."

Hedleston v. Va. Ret. Sys., 62 Va. App. 592, 594 (2013).

In January 2012, Rhoades developed extreme headaches. She woke up one day with

intense pain in her right ear, which rapidly progressed to complete facial paralysis on the right

side of her face. Rhoades' hearing in her right ear was temporarily reduced, but it improved.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

She visited an emergency room and was treated with steroids and antiviral medication. Rhoades was diagnosed with Bell's palsy. In February 2012, Rhoades continued to experience extreme headaches and eye strain. In April 2012, she had acupuncture treatments, which she stated "may have helped her some." In June 2012, Rhoades made "some recovery" from the January 2012 episode, and was able to start to close her right eye and draw her face up on the right side. Later that month, Dr. Bruce Redmon, an ear, nose, and throat specialist ("ENT"), reported that Rhoades was "making slow progress." She had voluntary movement of the mid-face and could close her right eye, but she had no significant movement of her forehead or the corner of her mouth.

In August 2012, Rhoades was evaluated by Dr. Christopher Moore at the University of Virginia Health System. She reported less pain and mild improvement in the movement of her face, but still noted some facial weakness and eye watering.

In January 2013, Rhoades saw Dr. Redmon for a follow-up appointment. He reported that she still had some residual weakness of the right side of the face, but her facial tone at rest had improved significantly, and she also had significant improvement in the movement of her right face.

Rhoades saw Dr. Kofi Boahene, an ENT at Johns Hopkins Medicine, in December 2013. He opined that her January 2012 episode was more likely Ramsay Hunt syndrome[1] than Bell's palsy. He reported that Rhoades had chronic right-sided facial paralysis and wanted to approach the condition in a "conservative manner." Boahene recommended facial retraining exercises followed by Botox treatments of muscles in the neck and around the eye.

---

[1] Ramsay Hunt syndrome is characterized in part by severe facial palsy and may result in deafness, tinnitus, and vertigo. Taber's Cyclopedic Medical Dictionary 1992 (23d ed. 2017) (defining "Ramsay Hunt syndrome").

Rhoades received physical therapy at Johns Hopkins Hospital, The National Rehabilitation Hospital, and The Jackson Clinics. A therapist's record from Rhoades' visit to The Jackson Clinics on January 1, 2014, noted that her "rehab potential is fair to make significant functional gains in a reasonable length of time with the skilled intervention of the physical therapist."

However, in a letter to VRS dated June 20, 2014, Rhoades stated that no treatment she had received since developing right side facial paralysis had been successful and that the condition caused her severe and constant pain and headaches, along with reduced right side peripheral vision.

At the time of her initial episode in January 2012, Rhoades was employed as a housing advocate for the City of Manassas. She left that position in June 2013 not because of her health, but "because the grant ran out." On August 12, 2013, she became employed as a zoning administrator/planner for the Town of Round Hill. A job description for the position noted that its primary job duties included the following: analyzing and reviewing development plans; interpreting and enforcing the town's zoning ordinance; reviewing, updating, and revising the town's planning, zoning, and land use documents; preparing background information for public hearings; preparing staff reports; researching and writing grant applications; and performing special projects and studies as requested.

In November 2013, Rhoades' supervisor told her that the town council was dissatisfied with her performance and that she was disorganized and did not pay attention at meetings. During a January 2014 disciplinary meeting, she was given an improvement plan. In the plan, Rhoades was informed that her "performance in the areas of organization, preparation, and assuming responsibility ha[d] not met the [c]ouncil's expectations" and that her performance in these areas needed to improve within a three-month period.

On April 29, 2014, Rhoades was terminated from her position with the Town of Round Hill. In a June 2014 letter to VRS, Rhoades stated that the Town of Round Hill had terminated her employment because she was not "meeting the requirements of the job." However, on June 16, 2014, a human resources representative for the Town of Round Hill completed a form stating that Rhoades was performing all of the duties listed on the job description for her position.

On May 12, 2014, Rhoades filed an application with VRS for disability retirement benefits pursuant to the provisions of Code § 51.1-156(E). She cited facial paralysis and headaches due to the paralysis as her disabling conditions and indicated that these conditions prevented effective oral presentation and hindered her ability to concentrate and make clear decisions.

In the physician's report section of the application, Dr. George Stergis, a neurologist, stated that Rhoades had a diagnosis of Ramsay Hunt syndrome with a date of onset of January 2012. Dr. Stergis also opined that Rhoades' "uncontrolled facial pain" prevented her from performing her work duties and that she became unable to work beginning May 7, 2014. When asked to indicate what improvement Rhoades could expect within one year of treatment, Dr. Stergis stated, "None." He checked a box indicating "yes" when asked if he considered Rhoades to be permanently disabled from performing her work duties.

On July 10, 2014, the Medical Board conducted an initial review of Rhoades' case.[2] The Medical Board recommended denying Rhoades' application for disability, noting that Rhoades' disabling condition was "self-limiting" and that she did not have a permanent neurological

_____

[2] The Medical Board is "composed of physicians or other health care professionals who are not eligible to participate in" VRS. Code § 51.1-124.23(A). Among other duties, the Medical Board is charged, by statute, with "[i]nvestigating all essential health and medical statements and certificates filed in connection with disability retirement" and "[s]ubmitting to [VRS] a written report of its conclusions and recommendations on all matters referred to it." Code § 51.1-124.23(B)(2) and (B)(3).

disability which would prevent her from performance of her work duties. VRS denied Rhoades' application on July 14, 2014. Rhoades sought review within VRS, submitting new letters and medical records from Dr. Stergis and Dr. Stefan Dupont.

The letter submitted from Dr. Stergis was dated July 14, 2014, and in it he wrote that Rhoades "remained symptomatic as [her] recovery has been incomplete" and "requires medications that have unfortunately caused her to become forgetful and inattentive." Dr. Stergis wrote that alternative pain management strategies had proven "useless," and as a result Rhoades was unemployable "as she cannot learn new information."[3]

Rhoades submitted new medical records from an August 15, 2014 visit to Dr. Stefan Dupont, a vascular neurologist in Akron, Ohio. The notes from this visit indicate that Rhoades' facial pain had worsened and that the frequency of this pain was persistent. The notes further indicate that Botox treatments had not been helpful. The recommended treatment was for Rhoades to enroll in a chronic pain rehabilitation program at Cleveland Clinic Hospital. In a letter dated September 2, 2014, Dr. Dupont opined that Rhoades' facial paralysis would not improve and that she had a permanent neurological disability which would prevent her from adequately performing her previous duties.

On October 29, 2014, the Medical Board reviewed Rhoades' submitted documentation in its second review of her claim. The Medical Board continued to recommend the denial of Rhoades' application. It stated that Rhoades' recommended treatment was facial exercises and Botox and that she had not provided additional objective treatment documentation regarding her response to this treatment. It also noted that Rhoades had reported memory impairment, but her reported pain medication did not have a typical adverse reaction of memory impairment.

---

[3] Dr. Stergis had previously opined in notes from a visit by Rhoades on May 20, 2014, that Rhoades was "unable to commute to a job" and "unemployable."

Further, she had not had any objective testing of her cognitive functions such as a neurocognitive evaluation. Additionally, the Medical Board stated that Rhoades might benefit from interventional pain management for her facial pain and that there were different surgical options to correct for facial asymmetry. It concluded that Rhoades had not had "all therapeutic options which may provide significant improvement in her condition." On October 30, 2014, VRS again denied Rhoades' application.

Rhoades again sought review of this decision within VRS. She submitted additional evidence, including medical records from Cleveland Clinic Hospital and a questionnaire completed by Dr. Stergis.

The medical records from Cleveland Clinic Hospital's Pain Management Center indicate that on October 6, 2014, Rhoades was evaluated by Dr. Robert Bolash. Rhoades reported right-sided facial pain and numbness in her upper arm and hand. She also stated that she was unable to fully close her mouth, had difficulty concentrating, and had tremors in her neck, right eye, and anterior facial muscle when she was exhausted. The records from this visit indicate that Rhoades reported that she had Botox treatments in November 2013 at Johns Hopkins and that the Botox relieved 90% of her pain symptoms but wore off after six months.

The records from Cleveland Clinic Hospital also indicated that on November 7, 2014, Rhoades had a spinal MRI which revealed mild degenerative changes in the cervical spine.

On December 29, 2014, Rhoades again visited Cleveland Clinic Hospital's Pain Management Center. She reported cervical spasms and pain in her neck and right face. She also reported that her facial pain had worsened two months earlier, at which point she visited the emergency room. The notes reflect that Rhoades did not respond well to Lyrica medication, but that she had responded to Botox injections to cervical muscles in the past "with > 75% pain reduction for 9 months." Rhoades was given Botox injections during the visit. Dr. Bolash

reported that Rhoades' right-sided facial droop had improved since her last visit. He also changed her medication from Lyrica to another medication.

In a questionnaire completed on March 17, 2015, Dr. Stergis indicated that he last saw Rhoades on May 20, 2014, after which she moved to Ohio. When asked whether, to a reasonable degree of medical probability, Rhoades' condition was expected to improve in the future, Dr. Stergis checked "yes." However, he checked "no" when asked if Rhoades' ability to function on an eight-hour day, five-day per week basis was expected to improve in the future. He noted that his answers were "based on [Rhoades'] last exam."

On April 16, 2015, the matter was heard before a hearing officer. During the hearing, Rhoades stated that physical therapy did not really help her condition and "[s]ometimes it made it worse." Rhoades testified that when she appeared confused at her job, it was because she was "concentrating on the pain" rather than the job. She stated that she was terminated because "at that point [she] couldn't do [her] job."

On May 18, 2015, the Medical Board completed a third review of Rhoades' claim. The Medical Board noted that Rhoades had an MRI which showed only mild degenerative changes. It also noted that Rhoades had received Botox injections and reported having 75% improvement in her symptoms. The Medical Board continued to find no objective evidence of a permanent neurological impairment, and again recommended denial of Rhoades' application.

On June 15, 2015, the hearing officer issued his decision. He concluded that the medical reports and the evidence adduced at the informal fact-finding hearing demonstrated that Rhoades did not satisfy the disability retirement requirements of Code § 51.1-156. The hearing officer noted that "[s]everal doctors have concluded that [Rhoades] is disabled due to RHS [Ramsay Hunt syndrome]; however, their reports do not explain why several treatment options noted elsewhere in the record will not work and alleviate her pain and blurred vision." Further, the

hearing officer found that Rhoades was terminated "for disorganization, lack of professional image in public meetings, poor preparation, failure to forward emails and lack of responsibility," and thus "the case record documents inadequate job performance, not incapacity from a medical condition." The hearing officer also noted that after her January 2012 episode of Ramsay Hunt syndrome, Rhoades returned to work at the City of Manassas and was later hired by the Town of Round Hill; "[i]n view of these facts, her facial pain and blurred vision cannot be said to have incapacitated her."

On August 25, 2015, VRS issued a final case decision denying Rhoades' application. In its final case decision, VRS found that Rhoades was not incapacitated for the further performance of duty and that even if it were to find that she was incapacitated, the medical evidence does not demonstrate that such incapacity was likely to be permanent.

On October 22, 2015, Rhoades filed a petition for appeal of the final case decision to the circuit court. The circuit court affirmed VRS's final case decision denying Rhoades' application for disability retirement benefits. The court found substantial evidence in the administrative record to support VRS's findings that Rhoades was not disabled under Code § 51.1-156 and that her condition lacked permanency.

Rhoades now appeals the decision of the circuit court.

## II. ANALYSIS

On appeal, Rhoades argues that the circuit court erred in finding that substantial evidence supported VRS's findings that (1) she was not incapacitated for the further performance of her duties as a zoning administrator/planner, and (2) if she was incapacitated, her incapacity was not likely to be permanent.[4]

---

[4] On appeal to this Court, Rhoades also assigned error to VRS's determination that she was not entitled to disability retirement because her condition existed at the time she became a VRS member and the medical evidence did not indicate that her condition substantially

In an appeal of an agency decision, "the party complaining of the agency action must demonstrate an error of law, which error may include 'the substantiality of the evidentiary support for findings of fact.'" Va. Ret. Sys. v. Blair, 64 Va. App. 756, 763 (2015) (quoting Code § 2.2-4027).

> The meaning and application of the substantial evidence standard in the context of appellate review have been long established.  As we have stated on numerous occasions, an appellate court applying the substantial evidence standard may "reject an agency's factual findings only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.  "Substantial evidence" refers to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Id. at 765 (quoting Doctors' Hosp. of Williamsburg, LLC v. Stroube, 52 Va. App. 599, 607 (2008)).  In making the substantial evidence determination, "the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242 (1988).

### A.  Incapacitated for Further Duty

Code § 51.1-156(E) sets the standard for disability retirement for VRS.  The statute provides, in pertinent part, that a member may be retired for disability after the Medical Board certifies that "the member is and has been continuously since the effective date of retirement if prior to filing of the notification, mentally or physically incapacitated for the further performance of duty."  Code § 51.1-156(E)(i).

---

worsened during her employment.  However, as both parties acknowledged at oral argument, the circuit court found that VRS had abused its discretion in finding that her condition pre-existed her membership in VRS.  Therefore, as the circuit court has already ruled in Rhoades' favor on this issue, we do not consider Rhoades' argument regarding the existence of her condition at the time she became a VRS member.

Rhoades argues that substantial evidence did not support VRS's decision that she is not incapacitated for the further performance of her duties as a zoning administrator/planner. In support of her argument, Rhoades points to the job description she provided and the improvement plan she was given by the Town of Round Hill which stated that she was not "meeting the [c]ouncil's expectations." Rhoades argues that the evidence established that her termination was for a medical reason rather than for performance reasons. She notes that several doctors concluded that she was disabled by Ramsay Hunt syndrome and several medical reports acknowledged that her condition is capable of producing pain, which she stated caused her poor work performance because she was "concentrating on the pain rather than [her] job."

However, we find that the administrative record supports VRS's finding that Rhoades was not incapacitated for the further performance of duty under Code § 51.1-156(E). At the time of her initial episode in January 2012, Rhoades was employed as a housing advocate for the City of Manassas. She left that position in June 2013 not because of her health, but "because the grant ran out." On August 12, 2013, she began work as a zoning administrator/planner for the Town of Round Hill. While Rhoades continued to seek treatment for her condition during this time period, the hearing officer noted that after Rhoades' January 2012 episode of Ramsay Hunt syndrome, she returned to work at the City of Manassas and was later hired by the Town of Round Hill. She still was able to return to work and obtain a new job while experiencing symptoms of her medical condition. In addition, following her termination, a human resources representative of the Town of Round Hill filled out a form stating that Rhoades was performing all of the duties listed on the job description for her position when she was terminated.

Further, Dr. Stergis opined Rhoades was "unemployable" and "permanently disabled" in May and July 2014, after Rhoades' termination from employment in April 2014. None of Rhoades' treating physicians opined that she was unable to work due to her disabling condition

prior to her termination in April 2014. Dr. Stergis specifically opined that the date Rhoades "became unable to work" was May 7, 2014.

While there may be contrary evidence in the record in the form of Rhoades' testimony that her poor job performance was due to her pain, this does not compel the conclusion that there was not substantial evidence to support VRS's alternate conclusion. Rather, we examine whether substantial evidence supported VRS's determination. See Blair, 64 Va. App. at 769 ("The existence of evidence in the record supporting a contrary conclusion does not establish that there is not substantial evidence in the record to support an agency's determination."). Under the substantial evidence standard, this Court "reject[s] an agency's factual findings only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." Id. at 765 (quoting Stroube, 52 Va. App. at 607). Considering the record as a whole, we cannot say that a reasonable mind necessarily would come to a different conclusion from the one reached by VRS. Further, we have "also observed that 'the deference that we give to the [agency's] fact finding on medical questions is based upon the "unwisdom of an attempt by . . . [courts] uninitiated into the mysteries [of the medical science debate] to choose between conflicting expert medical opinions.""" Johnson v. Virginia Ret. Sys., 30 Va. App. 104, 111 (1999) (alterations in original) (quoting Stancill v. Ford Motor Co., 15 Va. App. 54, 58 (1992)). Therefore, we find that substantial evidence supports VRS's finding that Rhoades was not incapacitated for the further performance of her duties as a zoning administrator/planner.

## B. Likelihood of Permanency

Rhoades further argues substantial evidence did not support VRS's decision that she failed to show that her condition is likely to be permanent. Code § 51.1-156(E) provides that, for a member to qualify for disability retirement benefits, the Medical Board "shall certify that (i) the member is and has been continuously since the effective date of retirement if prior to

filing of the notification, mentally or physically incapacitated for the further performance of duty, (ii) the incapacity is likely to be permanent, and (iii) the member should be retired." We have already held under Rhoades' first assignment of error that VRS did not err in determining that she was not incapacitated. Because this holding is dispositive as to whether VRS erred in denying Rhoades' application for disability retirement benefits, we need not address her argument regarding permanency.

## III. CONCLUSION

For the reasons set forth above, we conclude that the circuit court did not err in affirming VRS's decision denying Rhoades' application for disability retirement benefits.

Affirmed.