COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


LINK M. SMITH
                                            OPINION BY
v.         Record No. 2898-97-3    JUDGE DONALD W. LEMONS
                                         DECEMBER 22, 1998
DEPARTMENT OF MINES, MINERALS AND ENERGY,
 DIVISION OF MINED LAND RECLAMATION AND
 G & A COAL COMPANY, INC.


             FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                     Donald R. Mullins, Judge

             Donald R. Johnson for appellant.

             (Mark L. Earley, Attorney General; Richard B.
             Zorn, Senior Assistant Attorney General;
             John C. Wilkinson, Assistant Attorney
             General, on brief), for appellee Department
             of Mines, Minerals and Energy, Division of
             Mined Land Reclamation.

             (Monroe Jamison, on brief), for appellee
             G & A Coal Company, Inc.


     Link M. Smith appeals the final order of the circuit court

upholding the decision of the Department of Mines, Minerals and

Energy denying him replacement of lost residential water

supplies.  Because the trial court committed no error, we affirm.

     Link M. Smith owns approximately 324 acres of land in Bandy,

Virginia, most of which is located above an underground coal mine

operated by G & A Coal Company (G & A) pursuant to a permit it

acquired in 1984.  Smith has a residential water well located on

his property which he claims has been adversely affected by the

operation of the mine.

     Smith has filed four complaints with the Division of Mined

Land Reclamation (DMLR), a branch of the Department of Mines, Minerals and Energy (DMME).  In 1987, his first complaint alleged that his water supply was diminished in the well, forcing him to replace it.  In 1990, he complained of water loss to his replacement well.  In 1991, Smith complained about the diminished water supply and the reopening of ground cracks on his property.  In 1993, Smith alleged that he first became aware of pollution and deterioration of the replacement well.  His fourth complaint, filed on August 10, 1993, alleges loss of residential water supply.  The fourth complaint is the subject of this appeal.

In 1992, the United States Congress passed the Energy Policy Act of 1992.  This Act mandates that companies operating underground coal mines replace residential water supplies that were polluted or lost as a result of mining activity.  See 30 U.S.C. § 1309(a)(2).  This provision applies to any loss that results from underground mining after October 24, 1992.  Id.  In July 1993, the General Assembly of Virginia amended the Virginia Coal Surface Mining Control and Reclamation Act of 1979 (VCSMCRA) to similarly require the replacement of lost residential water supplies.  See Code § 45.1-258(B).

On June 28, 1994, the DMLR issued Technical Report #1562 in response to Smith's fourth complaint.  The report concluded that Smith's water loss complaint in 1993 resulted from mining activities conducted prior to October 24, 1992.  Finding that Code § 45.1-258(B) requires the replacement of water loss only by

underground mining activity conducted after October 24, 1992, the DMLR concluded that it could not order G & A to replace Smith's lost water.

On November 30, 1994, an administrative hearing was held on Smith's complaint.  The hearing officer granted G & A's petition to intervene as a party.  On March 15, 1995, the hearing officer issued an opinion finding that because of the location of the first well, "it is unlikely that underground mining activity by G & A Coal Co., Inc. has contributed to [Smith's] water losses." Further, with respect to the second well, the opinion stated "since the mining activities that resulted in these losses of water [predated] October 24, 1992, the [DMLR] cannot require replacement of the supply."  On March 17, 1995, the hearing officer's opinion was adopted by the Deputy Director for Regulatory Services for the DMME.  In the same letter, the Deputy Director affirmed the hearing officer's opinion and adopted the hearing officer's "Findings of Fact" and "Conclusions of Law." By letter dated May 4, 1995, the DMME denied Smith's request for reconsideration and review.

On May 26, 1995, Smith filed a Notice of Appeal with the Circuit Court of Tazewell County.  Smith received a letter, dated May 31, 1995, from the Hearings Coordinator of the DMLR, listing the contents of the administrative record, including the "Formal Hearing Transcript and exhibits (11/30/94)."  On December 23, 1996, the circuit court heard argument from Smith and DMLR, as

parties, and G & A, as intervenor.  By order dated November 6, 1997, the court found substantial evidence in the record to support the DMLR's decision and dismissed Smith's appeal.

After the entry of the final order, Smith alleges that he discovered that the DMLR had omitted all hearing exhibits from the transcript filed with the circuit court.  On November 13, 1997, Smith filed a "Motion for Reconsideration of Judgment."  On December 1, 1997, Smith filed a "Motion for Reconsideration of Judgment and for Order Requiring Completion of Record by Agency."  By order dated January 9, 1998, upon Smith's ore tenus motion to withdraw the "Motion for Reconsideration of Judgment" and the concurrence of the DMLR and G & A, the court ordered the November 13 motion stricken from the record and denied Smith's December 1 motion requesting that the allegedly missing exhibits be filed as a part of the record, stating: "[f]inding the record complete . . . any possible objection to the completeness of the record is too late."

## THE RECORD

The provisions of the Virginia Coal Surface Mining Control and Reclamation Act, Code § 45.1-226 et seq., mandate review procedures conducted by formal administrative hearings.  In addition, the Act makes provisions for parties seeking judicial review of administrative decisions, and makes all participating entities subject to the provisions of the Virginia Administrative Process Act (APA) (Code § 9-6.14:1 et seq.).  Code § 45.1-251.

Part Two A of the Rules of the Supreme Court of Virginia prescribes appeals pursuant to the Administrative Process Act. The Rules state:

> The agency secretary shall prepare and certify the record as soon as possible after the notice of appeal and transcript or statement of testimony is filed and shall, as soon as it has been certified by him, transmit the record to the clerk of the court named in the notice of appeal. . . . The agency secretary shall notify all parties in writing when the record is transmitted, naming the court to which it is transmitted. . . .

Rule 2A:3(b).

> The record on appeal from an agency proceeding shall consist of all notices of appeal, any application or petition, all orders or regulations promulgated in the proceeding by the agency, the opinions, the transcript or statement of the testimony filed by appellant, and all exhibits accepted or rejected, together with such other material as may be certified by the agency secretary to be a part of the record.

Rule 2A:3(c).

At the hearing before the hearing officer held on November 30, 1994, Smith introduced several exhibits. Smith alleges that these exhibits were not contained in the record received by the circuit court. Smith argues that whether it was a mere oversight, or an intentional exclusion, the agency's failure to include the exhibits in the administrative record constituted a failure to comply with its duty under Rule 2A:3(b). The agency argues that the record received by the circuit court included the exhibits and cites the circuit court's hearing transcript, the

court's failure to indicate a lack of familiarity with the referenced exhibits during the hearing, and the explicit statement in its order that it considered the "exhibits in the administrative record" dismissing Smith's appeal.

By order dated November 6, 1997, the court found substantial evidence to support the DMLR's decision, and dismissed Smith's appeal. On November 13, 1997, Smith filed a "Motion for Reconsideration of Judgment." On December 1, 1997, Smith filed a "Motion for Reconsideration of Judgment and for Order Requiring Completion of Record by Agency." On December 3, 1997, a telephone conference was held during which Smith's counsel moved to withdraw his November 13 motion on the grounds that pursuant to Rule 1.1, the court no longer had jurisdiction to vacate, modify, or otherwise reconsider the verdict. Neither counsel for DMLR nor G & A had any objection. The court granted the motion and then considered Smith's December 1 motion.

Without specific citation to any particular rule, Smith maintains in his December 1 motion that the Rules of the Supreme Court require the DMLR, after 21 days from the entry of the final order, to file the allegedly missing documents with the trial court.[1] Any objection to the status of the record was not timely and will not be considered on appeal. Rule 5A:18.

---

[1] The provisions of Part 5A of the Rules relating to completion of the record refer to the transmittal of the record from the circuit court to the Court of Appeals. Part 5A does not apply to the transmittal of the record from the agency to the circuit court. <u>See</u> Rule 2A:3.

It is the agency's responsibility to prepare and certify the record to the circuit court.  See Rule 2A:3(b),(c).  Assuming without deciding that the circuit court did not have a complete record before it during the hearing, any objection by Smith was too late for the trial court to correct the problem and, consequently, inadequate to preserve the issue for appeal.  Had it been established in a timely manner that the entire record required By Rule 2A:3(b),(c) was not before the court, failure to grant Smith's motion for reconsideration of the trial court's ruling would have been an abuse of discretion.  The filing of the November 13, 1997 motion was within the time the court could act to correct the problem.  Rule 1:1.  But the matter was not placed on the docket and brought to the court's attention so it could consider the merits of the motion.

"[I]t is well established that the purpose of Rule 5A:18 is to require a party to raise an issue in a timely fashion before the trial judge so the court has opportunity to address the issue and prevent unnecessary appeals."  White v. Commonwealth, 21 Va. App. 710, 720, 467 S.E.2d 297, 302 (1996).  Here, the matter was not placed before the judge in a timely manner, giving the court the opportunity to address the merits of the issue.  To compound the omission, the November 13, 1997 motion was withdrawn by Smith, thereby removing it from consideration by the trial court.  Smith's December 1, 1997 motion was filed more than 21 days after the final order was entered.  The court had no power to

entertain that motion. Consequently, the issue of the completeness of the record before the trial judge was not preserved for appeal. Rule 5A:18.

SUBSTANTIAL EVIDENCE

In reviewing an agency decision, "[t]he scope of court review of a litigated issue under the APA is limited to determination [of] whether there was substantial evidence in the agency record to support the decision." State Board of Health v. Godfrey, 223 Va. 423, 433, 290 S.E.2d 875, 880 (1982); see Code § 9-6.14:17. The substantial evidence standard is "designed to give great stability and finality to the fact-findings of an administrative agency." Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983). A trial court may reject the findings of fact "only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Id. (citing B. Mezines, Administrative Law § 51.01 (1981)). The burden of proof rests upon the party challenging the agency determination to show that there was not substantial evidence in the record to support it. See Code § 9-6.14:17.

The circuit court found substantial evidence in the record for the DMME to uphold the hearing officer's findings that Smith's water losses were either unrelated to G & A's mining activities, or that the mining activities which caused the loss took place prior to October 24, 1992. Smith argues that the hearing officer's conclusions were not supported by substantial

evidence and that pursuant to Code § 45.1-258, he is entitled to have his water loss replaced.

At the hearing before the hearing officer, the DMLR introduced Technical Report (TR) #1562 that had been issued by the DMLR following the filing of Smith's fourth complaint.  The report analyzed information provided by Smith, as well as "several previous DMLR Technical Reports . . . DMLR permit data, company mine maps, and Division of Mines' maps . . . ."  The Report determined,

> [i]t is likely that underground mining by G & A . . . caused some damage to some local water-bearing zones. . . . However, the water loss complaint regarding [the] Smith [property] is unsubstantiated. . . .  Also, [Smith's] domestic well is located approximately 600 feet updip from the mine works, outside the area of influence.

(Emphasis added).  The Report stated further,

> [t]he proximity of mining, in terms of distance and time, is critical in determining the effects of underground mining.  The [area] being deep mined by G & A . . . in the area of the complaint . . . was conducted closest to the well in 1988 and the nearest pillar extraction in 1989.  Since that time mining operations have continued away from the complainant's residence. . . .  Because of the location of [Smith's] well . . . it is unlikely that his well and associated water-bearing zones have been impacted.

(Emphasis added).

The Report concluded, "[b]ased on the information examined during the technical investigation, it is unlikely that underground mining by [G & A] has contributed to water losses in

- 9 -

[other springs,] [h]owever, since the mining activities that resulted in these losses of water occurred before October 24, 1992, the [DMLR] cannot require replacement of the supply."

Other evidence included testimony by Jan Zentmeyer and Anthony S. Scales, both geologists employed with the DMME. Zentmeyer testified that she had investigated Smith's earlier complaints and that she had determined that wells and springs which Smith complained had been affected by G & A's mining operations were too far away to have been impacted. Scales testified that although he had not written TR #1562, he was familiar with Smith's case and the technical reports related to it. Scales testified that Smith's reliance on another case was misplaced.[2]

On behalf of the appellant, geologist Charles Barlett testified that water loss suffered by Smith was due to mining that took place after October 24, 1992. In evaluating the testimony of the experts, the hearing officer resolved the conflict in favor of Scales' testimony.

The hearing officer stated, "[t]he division's conclusion that G & A's mining did not cause material damage to the

___

[2]Smith attempted to rely on an unrelated matter, referred to as the "Nelson" report at the hearing. Scales testified that Smith's attempt to rely on the Nelson report was mistaken, because although in "Nelson" the hydrology had been adversely affected, it was a "local impact" which was not related to Smith's well. Additionally, the mining activities that caused the water loss on the Nelson property occurred before October 24, 1992; consequently, it was not compensable under Code § 45.1-258(B).

hydrological balance outside the permit area is valid. . . . The evidence at the hearing supported the view that there was not continuous fracture flow zone." In evaluating all evidence introduced at the hearing, the hearing officer determined, "[t]here has been no significant adverse impact on the hydrological balance in the area in question." The hearing officer concluded further that Smith's water loss was either unrelated to underground mining or was caused by mining operations that occurred before October 24, 1992.

In addition, the hearing officer's opinion stated that G & A obtained its permit to conduct mining operations in 1984. Smith's "replacement" well, the subject of this appeal, was drilled in 1987. Code § 45.1-258(B) requires the replacement of water lost "from a well or spring in existence prior to the application for a surface coal mining and reclamation permit . . . resulting from underground coal mining operations." Therefore, even if mining operations of G & A after October 24, 1992 caused water loss, because Smith's replacement well was drilled three years after G & A obtained its permit, the loss is not covered under the statute. Code § 45.1-258(B); 4 VAC § 25-130-817.41(j).

Smith argues that the DMLR's decision was "arbitrary" and that it acted outside the scope of its authority in this case. There has been no showing that the DMLR acted in an arbitrary manner, nor that it acted outside the scope of its authority in

rendering the Technical Report which determined that Smith's alleged water losses were not compensable. Smith has also failed to show that a reasonable mind would necessarily disagree with these findings. Because we review the decision of an agency with deference to its findings of fact, where substantial evidence in the record exists to support the agency's conclusions, we may not substitute our own judgment for that of the agency. Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7-8 (1988). We hold that substantial evidence was introduced to support the hearing officer's conclusion that the DMLR properly refused to order the replacement of Smith's water losses. The circuit court did not err in its affirmation of the agency decision.

                          CONCLUSION

Because substantial evidence in the agency record supports the decision that the DMLR was not required to order G & A to replace Smith's lost residential water supplies, the trial court's order upholding the agency's determination is affirmed. Smith's additional "Request for Writ Requiring Completion of Record by Agency" is denied.

                                      Affirmed.