COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Humphreys
Argued at Salem, Virginia


DANNY R. STEVENS

                                                              OPINION BY
v.        Record No. 0498-11-3                    JUDGE ROBERT J. HUMPHREYS
                                                            DECEMBER 13, 2011
TERESA B. STEVENS



              FROM THE CIRCUIT COURT OF NELSON COUNTY
                           J. Michael Gamble, Judge

              Linda Schorsch Jones (Eric N. Laurenzo; Poindexter, Schorsch,
              Jones & Hill, P.C., on brief), for appellant.

              C. Lynn Lawson (Stephen K. Strosnider; Franklin, Denney, Ward &
              Lawson, P.L.C., on brief), for appellee.


        Danny Stevens ("husband") appeals an order from the Circuit Court of Nelson County

("circuit court"), granting him a divorce *a vinculo matrimonii*, ordering a distribution of marital

property, and entering a judgment in favor of Teresa Stevens ("wife").  Specifically, husband

maintains that the circuit court erred in its classification and valuation of the real estate.  We hold

that there is sufficient evidence to support the circuit court's finding regarding the classification and

valuation of the real estate, and, thus, we affirm.  Husband also contends that the circuit court erred

in its rulings regarding the distribution of the personal property of the parties and in determining the

sum of money owed from husband to wife in its equitable distribution ruling.  However, since

husband failed to preserve these arguments by securing a ruling in the circuit court, we do not

address the merits of these assignments of error.[1]

_____

        [1] Husband suggests that these arguments are preserved by his February 28, 2011 motion
to reconsider.  However, this motion was filed on the 21st day following the entry of the final
order of the circuit court.  The circuit court did not consider the merits of husband's motion

I.  Background

Husband and wife were married on July 2, 1977.  Husband had three brothers:  Joe, Dennis, and Roger ("Roger").  Their parents, Sam and Nancy Stevens ("Sam" and "Nancy," respectively) owned a parcel of property located in Nelson County, Virginia (the "Farm").

On August 12, 2001, Sam and Nancy created a trust "to preserve [their] marital residence for [their] children free from any claim by [their] creditors, now and in the future" in a document entitled, "The Sam C. and Nancy T. Stevens Trust Agreement" (the "Trust").  In the Trust document, Sam and Nancy reserved a life estate in any real property that the Trust owned.  Once Sam and Nancy both died, the Trust property was to be sold and the proceeds distributed to their children per stirpes or transferred to their children and, if one of their children predeceased them, to the predeceased child's children.  Sam and Nancy then sold the Farm to the Trust.

Under Article VII of the Trust, Sam and Nancy

> reserve[d] the right at any time, upon written notice to the Trustee, to amend, but not revoke this Trust Agreement in whole or in part, provided that no amendment changing the powers, duties or compensation of the Trustee will be effective unless accepted in writing by the Trustee.  The Trustee reserve[d] the right, at any time, upon written notice to the Settlors or to the survivor, to resign and return the trust property to the Settlor(s) or his or her designee or personal representative.

---

because at the time of the hearing on the motion, the 21-day period prescribed by Rule 1:1 of the Rules of the Supreme Court had elapsed, depriving the circuit court of further jurisdiction in this case.  Thus, we are barred from addressing these issues on appeal.  Rule 1:1 ("All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."); see also Smith v. Department of Mines, Minerals & Energy, Div. of Mined Land Reclamation, 28 Va. App. 677, 684, 508 S.E.2d 342, 345 (1998) ("The filing of the November 13, 1997 motion was within the time the court could act to correct the problem.  Rule 1:1.  But the matter was not placed on the docket and brought to the court's attention so it could consider the merits of the motion.").

Further, Article II of the Trust stated that "[t]he Trustee will hold all real property, for [Sam and Nancy's] lifetime or until such other time as [Sam and Nancy], jointly, or the survivor of them instruct(s) the Trustee to sell or otherwise distribute the Trust Assets as herein provided."

At some point after it was conveyed to the Trust, the four brothers met and discussed the disposition of the Farm. They decided that it was to be sold to one of the brothers. Husband said he wanted it, and his brothers agreed. Husband approached Nancy and asked to buy the property, and she agreed.

Sam, Nancy, and the Trust entered into a contract to sell the property to husband and wife on May 15, 2002.[2] Under the contract, husband was to buy the property for $100,000. At the time, the property was worth $10,000 to $15,000 per acre, and it consisted of approximately 19 acres. However, husband ultimately satisfied his debt with a promissory note for $75,000. The note was paid off by selling husband and wife's current house.

The contract was "made and entered into" between Sam, Nancy, and the Trust as the sellers and husband and wife as the "Purchaser." Further, the contract contained a clause stating that the "contract represents the entire agreement between Seller and Purchaser and may not be modified or changed except by written instrument executed by the parties."

Eventually, husband grew unhappy with wife. He wrote her a letter expressing his feelings a few days after July 2, 2009 and left their house. Husband then filed a complaint seeking a divorce on February 11, 2010. At the conclusion of the divorce proceedings, the circuit court entered an order granting husband a divorce *a vinculo matrimonii*. This order was entered on February 7, 2011. In the order, the circuit court "found that all property in evidence was marital for the reasons set forth in the Court's letter opinion incorporated herein . . . ." Husband objected to the final order because "[t]he evidence clearly showed that a portion of the

---

[2] Sam passed away after entering into the contract, but before closing took place.

- 3 -

real estate and tangible property in question was inherited by the Plaintiff and subject properties should have been classified as inherited for the purposes of equitable distribution."

## II. Real Estate Classification and Valuation

On appeal, husband alleges that the circuit court erred in its classification and valuation of the real estate. Husband contends that the Farm should have been classified as part marital, part separate property, since he separately "owned" a one-fourth interest in the Farm.

"On appeal, we view the evidence in the light most favorable to the prevailing party." Ranney v. Ranney, 45 Va. App. 17, 31, 608 S.E.2d 485, 492 (2005). Further, "the trial court's classification of property is a finding of fact, [so] that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Id. at 31-32, 608 S.E.2d at 492.

Code § 20-107.3 governs equitable distribution in Virginia. Under this section,

> the court, upon request of either party, . . . shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property . . . .

Code § 20-107.3(A). In relevant part, separate property includes "all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party" and "that part of any property classified as separate pursuant to [the subdivision governing part marital part separate property]." Code § 20-107.3(A)(1).

Marital property, on the other hand, is

> (i) all property titled in the names of both parties, whether as joint tenants, tenants by the entirety or otherwise, except as provided by [the subdivision governing part marital part separate property], (ii) that part of any property classified as marital pursuant to [the subdivision governing part marital part separate property], or

(iii) all other property acquired by each party during the marriage which is not separate property as defined above.

Code § 20-107.3(A)(2).

However, property can also be classified as hybrid property that is part marital, part separate. For example, "[w]hen separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property." Code § 20-107.3(A)(3)(f). But, "to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification." Id.

Likewise, "[w]hen marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property." Code § 20-107.3(A)(3)(e). But "to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification." Id. However, "[n]o presumption of gift shall arise" in either of these situations. Code § 20-107.3(A)(3)(h). Thus, the question becomes whether husband successfully retraced one quarter of the Farm to his separate property by a preponderance of the evidence.

Husband initially approached his mother seeking to purchase the Farm. She agreed and directed the Trust to sell the Farm. The law is well settled with respect to a trust that,

> [e]xcept in cases covered by § 74 (involving powers of revocation and other ownership-equivalent powers), if the terms of a trust reserve to the settlor or confer upon another a power to direct or otherwise control certain conduct of the trustee, the trustee has a duty to act in accordance with the requirements of the trust provision reserving or conferring the power and to comply with any exercise of that power, unless the attempted exercise is contrary to the terms of the trust or power or the trustee knows or has reason to believe that the attempted exercise violates a fiduciary duty that the power holder owes to the beneficiaries.

Restatement (Third) of Trusts § 75 (2007).  In Virginia, the duty is no different, as a trustee is required to "administer the trust and invest trust assets in good faith, *in accordance with its terms and purposes . . . .*"  Code § 55-548.01 (emphasis added).  Further, "[a] trustee, without authorization by the court, may exercise . . . [p]owers conferred by the terms of the trust."  Code § 55-548.15(A)(1).

In this case, the Farm was initially conveyed to the Trust and, therefore, was governed by its terms.  Specifically, the terms of the Trust required that the Trustee "hold all real property, for [Sam and Nancy's] lifetime *or until such other time as [Sam and Nancy], jointly, or the survivor of them instruct(s) the Trustee to sell or otherwise distribute the Trust Assets as herein provided*."  (Emphasis added).  Thus, upon instruction from Sam and Nancy to sell the Farm to husband and wife, Roger, as trustee, was obligated to comply.

Ultimately, the sale of the Farm was executed between Sam, Nancy, Roger as the Trustee, and husband and wife.  Thus, at a minimum, the Farm became transmuted, untraced marital property following the sale.  However, at this point the Farm was no longer an asset of the Trust and, therefore, was not subject to any of its terms.  Thus, the Trust provision governing the distribution of the Farm as a Trust asset upon Sam and Nancy's death became irrelevant, and husband could not receive any interest in the Farm through the Trust.  Under the plain terms of the Trust, the brothers would only receive an equal share of the remaining trust assets upon the deaths of both Sam and Nancy.  In other words, the Trust gave the brothers a vested remainder in the trust assets that would not ripen into actual title until the deaths of the parents.  See, e.g., Miller v. Citizens Nat'l Bank, 191 Va. 297, 302, 60 S.E.2d 868, 870 (1950) (noting that in "mak[ing] his two children beneficiaries of his entire estate in fee after his wife's death," the father "intended his two children to have a vested remainder which . . . ripened into title in fee upon the death of the life tenant").  By removing the property from the trust assets, husband and

- 6 -

his brothers no longer had a future interest in the Farm, and husband and wife thereafter possessed the Farm as marital property.

Next, husband contends that there is clear evidence that one-fourth of the Farm was given to him as a gift. However, the evidence does not support his contention. The contract for the sale of the Farm specifically listed both husband and wife as "Purchaser." There is nothing in the contract that mentions anything about a gift of one-fourth of the Farm to husband. Rather, the contract contains a clause that states that the contract "represents the entire agreement between Seller and Purchaser and may not be modified or changed except by written instrument executed by the parties." Further, the Farm was paid for using the proceeds of the sale of husband and wife's house.

Husband also contends that he "inherited" one-fourth of the Farm when Sam and Nancy died. However, this argument is unavailing as well. The Farm was not "inherited" but rather was conveyed to husband and wife jointly through a sale. At the time of the sale, Nancy was still alive and retained the ability to amend the terms of the Trust that owned the Farm.

Husband contends that the difference in the contract price and the value of the promissory note is evidence of a gift. It is uncontested that the contract was for $100,000 and the note evidencing the debt was only for $75,000. However, this merely suggests that there was a forgiveness of $25,000 of debt. It does not necessarily suggest that any part of the Farm was intended to be a gift, as neither the terms of the contract nor the terms of the promissory note contain any language suggesting such a gift.

### III. Conclusion

Because the Farm was sold to husband and wife jointly, and husband did not inherit or receive the property as a gift, the circuit court did not err in finding that it was marital property. Furthermore, because husband failed to preserve his arguments that the circuit court erred in its

rulings regarding equitable distribution of the personal property of the parties and in determining the sum of money owed to wife as a result of the equitable distribution ruling, we do not address these assignments of error.  Accordingly, the judgment of the circuit court is affirmed.

<u>Affirmed.</u>