COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Russell and Senior Judge Clements
Argued at Richmond, Virginia

UNPUBLISHED

DAVID MICHAEL HODGES

                                                MEMORANDUM OPINION* BY
v.        Record No. 0718-19-2                   JUDGE WESLEY G. RUSSELL, JR.
                                                DECEMBER 17, 2019

DONNA MARIE HODGES


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

Thomas L. Gordon (Gordon, Dodson, Gordon & Rowlett, on brief),
for appellant.

No brief or argument for appellee.


The trial court entered an order granting Donna Marie Hodges (wife) and David Michael

Hodges (husband) a divorce. Husband challenges rulings the trial court made regarding equitable

distribution, spousal support, and attorney's fees. For the reasons that follow, we affirm the

judgment of the trial court.

BACKGROUND[1]

Husband initiated the proceedings in the trial court by filing a complaint for divorce on

May 19, 2017. Wife was served with the complaint on June 2, 2017. According to the return of

service, she was also served with a notice of depositions at that time. However, the only copy of

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Niblett v. Niblett, 65 Va. App. 616, 622 (2015) (quoting Congdon v. Congdon, 40 Va. App. 255, 258 (2003)). Regarding the issues raised in this appeal, wife was the prevailing party in the trial court.

a notice of depositions in the record is one that was filed in the trial court on June 5, 2017. That notice does not indicate how or where it was to be served on wife.[2]

The notice of depositions included in the trial court record provides that husband's counsel will take the *de bene esse* depositions of husband and "others" on June 27, 2017, at his office. The notice specifically provides that the depositions will "be read into evidence in said cause for a determination of equitable distribution of the marital assets[.]"

On June 23, 2017, wife's counsel made an initial appearance, filing a motion requesting leave to file a late answer. In the motion, counsel noted that, based on wife having been served on June 2, 2017, her answer was due that day, which was the day counsel had been retained. By consent order that was entered on September 5, 2017, the motion was granted, and wife filed an answer and a counterclaim in which she also sought a divorce.

On June 27, 2017, counsel for husband took the deposition of husband as previously noticed.[3] He also took the deposition of the parties' adult son, Dustin. The deposition topics included marital assets and the grounds for divorce. Neither wife nor her recently retained counsel appeared or participated in these depositions. Husband filed the depositions with the trial court, and they were part of the evidentiary record before the trial court.

---

[2] We recognize that a party "in default is not entitled to notice of any further proceedings in the case, including notice to take depositions[.]" Rule 3:19(a). However, when the depositions were noticed, wife was not in default, having been first served with the complaint on June 2, 2017. See Rule 3:8(a) (providing that "[a] defendant shall file pleadings in response within 21 days after service of the summons and complaint"). Because she was not in default when the depositions were noticed, wife was entitled to receive notice of the depositions.

[3] At the beginning of husband's deposition on June 27, 2017, counsel for husband states: "Donna Marie Hodges, having been personally served on the 2nd day of June, 2017, with a Complaint and a Notice for today's depositions, today being June 27, 2017, and it being three o'clock, having heard no response from Ms. Hodges nor a phone call from an attorney representing Ms. Hodges, we will proceed with the EDA and the divorce depositions today as noticed."

After wife had filed her answer and counterclaim, the trial court entered a pretrial order. The order required that the evidence be taken by *de bene esse* depositions and established December 15, 2017, as not a trial date, but the date on which the parties would make final arguments based on the evidence adduced at the *de bene esse* depositions.

On November 20, 2017, multiple witnesses, including both parties, sat for *de bene esse* depositions. Wife's counsel began the examination of both wife and husband with husband's counsel asking questions thereafter. Although the examination of husband on November 20, 2017, was initiated by wife's counsel, it must be remembered that husband's testimony in the case was initiated by his counsel at the June 27, 2017 *de bene esse* deposition. Thus, the November 20, 2017 deposition was wife's opportunity to elicit testimony from husband regarding the divorce, including issues that his counsel first had asked about at the June 27, 2017 deposition of husband.

Based on the various *de bene esse* depositions,[4] it is established that the parties were married in 1985. Two children were born of the marriage, but they had reached the age of majority prior to commencement of these proceedings. The parties separated on February 11, 2014, and divorce proceedings commenced in May 2017.

Over the course of their marriage, the parties amassed considerable assets, including real property in addition to the marital home, numerous vehicles, retirement accounts, and bank accounts. Wife worked during the marriage until 2002, when she was laid off from Philip Morris, where she previously had suffered a work injury resulting in herniated disks. She later also underwent surgery to remove tendons from her right shoulder. Husband, who enjoys good health,

---

[4] Because both depositions of husband were submitted to the trial court for consideration, we treat both as his trial testimony. Accordingly, in summarizing his testimony, we take statements from each deposition as if they were given in one, unified proceeding.

was still employed at Philip Morris, where he historically earned not only base pay but overtime as an instrumentation electrician.

During the course of their separation and divorce proceedings, the parties were able to agree on how to resolve multiple issues regarding the distribution of various assets; however, they ultimately required the intervention of the trial court to resolve some of the issues pertaining to the distribution of their property and the amount of spousal support due wife.

Husband admitted that the parties maintained a joint account at Call Federal Credit Union during the marriage. He admitted that he unilaterally withdrew in excess of $60,000 from the account and deposited it into a separate account he had opened in his own name. He testified that he transferred the funds to protect them from wife spending them on drugs and alcohol and that he used them to pay the mortgage, uninsured medical bills incurred by wife, and property taxes. He said that he ran out of that money and then used his own funds. Husband also claimed that he paid several post-separation credit card bills of wife.

When asked why he did not just take half of the funds from the joint account, husband answered, "Because I was afraid that she would not be able to handle the money . . . . So I figured this way I could keep track of it." He further responded, "And I was writing all the bills and paying all the bills for the house plus her medical bills" in addition to paying her a monthly stipend. Among the bills he stated he was paying were the mortgage on the marital home; wife's utilities, including cable and cell phone; and wife's health insurance. He explained:

> My intention was that 30,000 of that belonged to me and thirty was for her and that we would saw things out and get things evened out to do. I asked [my counsel] whether I was able to use the other thirty. He said I could, but I'd be better off to keep that, since it was marital money, keep a check and do what I could do as far as a salary. If I was in a bind, then I could take and pull it out. So I kept everything written with checks to her, all of her expenses and everything.

Although husband stated that he "showed all the checks in that account where that 60,000 went," husband points us to no such supporting documentary evidence in the record.

During his testimony, husband also acknowledged that he had purchased a condominium in his name prior to the date of separation. He acknowledged making a down payment of somewhere between $38,000-$39,000 at that time. Husband claimed to have borrowed $40,000 from his father for the down payment and that he obtained a mortgage loan, also in his name, for the balance. He testified that no marital funds were used to pay for the condominium.

Husband further testified to his income for the years 2014, 2015, and 2016. For 2014, he claimed he received a total of $188,000 in income, $164,000 of which came from wages; for 2015, he stated that he earned $158,000 in salary, plus $25,000 in pension annuities; and for 2016, he testified that he had income of $203,000, $133,000 of which was wage income and $70,000 of which came from dividend payments. In addition, he anticipated that his wages in 2017 would be in excess of $125,000, but he could not provide a definite figure.

In addition to his testimony, husband produced some records related to his income, including his 2014 and 2015 federal tax returns. Based on the 2014 return, husband's total income was $188,744, composed of $164,475 in wage income, $22,253 in pension payments, and the remainder coming from rents and dividends. The 2015 return demonstrated that husband had $185,539 in income, which included $158,926 in wages and $25,715 in pension payments. Tax returns for 2016 or 2017 were not produced.

Wife testified that, when she learned of husband's unilateral withdrawal from the parties' joint credit union account, she demanded her portion back. According to wife, husband told her "that he doesn't think that I can handle my finances so that he's keeping it in his account." Wife described her work history and discussed her current inability to work and her living expenses. She

acknowledged that husband had been paying the mortgage and cable and provided her additional funds. Wife estimated that she had incurred $20,000 in attorney's fees.

On December 15, 2017, the trial court held the scheduled hearing to allow the parties to make closing arguments. In addition to hearing arguments, the trial court took testimony from the parties' adult son to corroborate the grounds of divorce. Specifically, the trial court asked the son if he recalled testifying at his June 27, 2017 deposition and whether his answers to those questions would "be any different" if he were asked them that day in court. The son responded that he remembered the deposition and that his answers would not be any different. Other than the son's testimony, no further testimony or evidence was adduced at the December 15, 2017 hearing.

The trial court issued a February 7, 2018 letter opinion providing its decision regarding equitable distribution. Noting that husband purchased the condominium prior to separation, the court found that "[h]usband made a down payment in the amount of $38,000.00[.]" Because the trial court further found that "[h]usband was unable to demonstrate the source of the funds used for the down payment[,]" the trial court classified the condominium as marital property. It also classified the Call Federal Credit Union account as marital property and noted that it had "a balance of $63,727.66 as of one month prior to the parties' separation."

In discussing "the use or expenditure of marital property by either of the parties for a nonmarital separate purpose," see Code § 20-107.3(E)(10), the trial court first found that, "[h]usband withdrew $60,000.00 from the parties' joint bank account. Husband failed to prove that he used these funds for a marital purpose." The trial court further stated,

> [p]rior to the date of separation, [h]usband purchased a condominium
> . . .; [he] testified that the down payment for the condominium was
> paid with funds that were loaned to him by his father. However, no
> [other] evidence was presented to verify that no marital funds were
> used in the acquisition of this property and to overcome the
> presumption that it is marital property. Wife did not know about the
> purchase of this condominium.

Because the trial court classified the condominium as marital property, it was subject to distribution. Although the trial court allowed husband to retain the property, it ruled that "[w]ife is entitled to 50 percent of the equity value of the property. If there is no equity value, then [h]usband is to pay [w]ife $19,000.00, 50 percent of the down payment, within six months of this [c]ourt's written opinion."

Regarding husband's unilateral withdrawal of funds from the parties' joint credit union account, the trial court ordered husband to pay half of the withdrawn amount to wife. The trial court explained,

> [h]usband failed to provide [sufficient] evidence that the $60,000.00 he withdrew from the parties' joint bank account was used for a marital purpose. Therefore, [h]usband shall pay [w]ife $30,000.00, 50 percent of the amount [h]usband withdrew from the account, within sixty days of this [c]ourt's written opinion. Husband and [w]ife are each entitled to 50 percent of the remaining balance of the account.

The trial court also ruled that wife would pay husband for his fifty percent share in the marital residence and granted husband a credit for fifty percent of the post-separation mortgage payments he had made.

In the letter opinion, the trial court acknowledged wife's request for spousal support, but concluded that it was "not in a position to determine [s]pousal [s]upport until the financial position of each party is resolved in [e]quitable [d]istribution" and ruled "that this issue be reserved to [w]ife for determination at a future date." The trial court similarly declined to award attorney's fees at that time, stating that "[t]he issue of [a]ttorney [f]ees is held until the [c]ase is finalized."

The trial court subsequently conducted a hearing on spousal support and attorney's fees; wife submitted an affidavit of fees showing attorney's fees totaling over $38,000. The trial court

entered its final decree on April 1, 2019.[5]  In addition to memorializing the trial court's equitable

distribution rulings, the decree included the following provision with regard to spousal support:

> Spousal support is payable directly from the [husband] to the [wife] in the sum of Two Thousand Seven Hundred Fifty Dollars and No Cents ($2,750.00) per month, effective September 1, 2018, payable thereafter directly to [wife] by [husband] on the First (1st) day of each month, and continuing thereafter indefinitely, noting that the Court used a composite of income figures for the years 2014 and 2015 to calculate [h]usband's income at One Hundred Sixty-One Thousand Seven Hundred Dollars and No Cents ($161,700.00) annually.

The trial court further ordered that husband pay wife $20,000 for attorney's fees.

Husband appeals, asserting four assignments of error.  He challenges the trial court's

classification of the condominium he purchased prior to the date of separation as marital property

and the trial court's resulting order that he pay wife $19,000 to reimburse her for her "share" of the

down payment.  In his second assignment of error, he argues that the trial court erred in failing to

conclude that he spent the funds he unilaterally withdrew from the parties' joint credit union

account on marital expenses, and thus, erred in ordering him to reimburse wife for her half of those

funds.  In his third assignment of error, he asserts the trial court erred in "using an 'income

averaging' method to determine [husband's] gross income[,]" and thus erred in its determination of

spousal support awarded to wife.  Finally, he asserts the trial court erred in awarding wife $20,000

for attorney's fees she had incurred.

## ANALYSIS

"We begin our analysis by recognizing the well-established principle that all trial court

rulings come to an appellate court with a presumption of correctness."  Niblett v. Niblett, 65

Va. App. 616, 623 (2015) (quoting Stiles v. Stiles, 48 Va. App. 449, 453 (2006)).  "[T]he party who

---

[5] The trial court had entered a divorce decree in March, but it entered an amended, final decree on April 1, 2019.

- 8 -

asserts the contrary is required to overcome the presumption by record proof." Hart v. Hart, 27 Va. App. 46, 69-70 (1998) (quoting Broom v. Broom, 15 Va. App. 497, 504 (1992)).

I. Classification of the condominium as marital property

The trial court classified the condominium as marital property subject to equitable distribution. Husband argues that the trial court erred in this regard and should have concluded that the condominium was his separate property. From this, he argues that the condominium should not have played a role in the trial court's equitable distribution decision. See Wiencko v. Takayama, 62 Va. App. 217, 232 (2013) (recognizing that not only is separate property not subject to equitable distribution, it "is irrelevant to the equitable distribution analysis[]" (footnote omitted)).

The trial court's classification of the condominium represents a question of fact. Stevens v. Stevens, 59 Va. App. 274, 279 (2011). Accordingly, we will not reverse a trial court's classification determination "unless it is plainly wrong or without evidence to support it." Id. (quoting Ranney v. Ranney, 45 Va. App. 17, 31-32 (2005)).

As did the trial court, we begin our review of the classification of the condominium with the undisputed fact that husband acquired the condominium during the marriage. Property that is acquired during the course of the marriage is presumptively marital property. Code § 20-107.3(A)(2). Accordingly, any analysis regarding the classification of the condominium begins with the presumption that it was marital property.

The applicable presumption is not absolute. Property acquired during the marriage will be considered separate property if it is acquired by "bequest, devise, descent, survivorship or gift from a source other than the other party" to the marriage, Code § 20-107.3(A)(1)(ii); is "property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property,"

- 9 -

Code § 20-107.3(A)(1)(iii); or is "that part of any property classified as separate pursuant to" Code § 20-107.3(A)(3). Code § 20-107.3(A)(1)(iv). The party claiming that property acquired during the marriage is separate property bears the burden of proving that claim, Gilman v. Gilman, 32 Va. App. 104, 116 (2000), and "if the property does not fall within the definition of separate property it must be classified as marital property," Garland v. Garland, 12 Va. App. 192, 196 (1991).

Recognizing the default presumption, husband argues that the evidence required a finding that the down payment for the condominium was made with non-marital funds, namely a loan from his father for that specific purpose. He argues that the trial court erred in not accepting his testimony on this point, which he contends was unrebutted. Although it is true that wife's testimony did not rebut husband's testimony,[6] the trial court was not required to accept husband's version of events.

Although testimony was taken by way of *de bene esse* deposition as opposed to occurring "live" in court, the trial court remained the fact finder. As such, it was the trial court's responsibility to "ascertain[] . . . witness' credibility [and] determine[] the weight to be given to" each witnesses' testimony. Wright v. Wright, 61 Va. App. 432, 450 (2013) (quoting Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*)). Accordingly, the trial court was free, as fact finder, "to accept or reject any of the witness' testimony." Id. (quoting Street, 25 Va. App. at 387).

Thus, the trial court was free to reject husband's testimony regarding the down payment of the condominium. It did not do so without explanation, noting that, other than husband's

---

[6] One explanation for husband's testimony about the condominium purchase being unrebutted was that husband surreptitiously bought the condominium during the marriage and wife did not find out that he had done so until after they were separated. The trial court reasonably could conclude that husband's secretive purchase fully explained why wife testified "I don't know" when asked about the funds husband used for the down payment on the condominium. Furthermore, the trial court was free, as a reasonable fact finder, to draw a negative inference from husband's undisclosed purchase.

uncorroborated testimony, "no evidence was presented to verify that no marital funds were used in the acquisition of" the condominium. The complete absence of any documentation regarding the alleged loan and the permissible negative inference the trial court obviously drew from the fact that "[w]ife did not know about the purchase of this condominium[,]" provided a more than sufficient basis for the trial court to reject husband's explanation. Given that husband bore the burden of proof to rebut the presumption that the condominium purchased during the marriage was marital property, Gilman, 32 Va. App. at 116, the trial court did not err in classifying the condominium as marital property.

Recognizing these general principles, husband argues that a different result should obtain because the evidence was adduced by way of *de bene esse* deposition and that wife's counsel took the lead in a deposition of husband, making husband *wife's* witness. Citing Rule 4:7(c), he argues that wife was bound by his unrebutted testimony regarding the purchase of the condominium because he had become her witness.

Rule 4:7(c) does not dictate the result sought by husband. It is true, as husband argues, that a party offering a witness' deposition in evidence can, under certain circumstances, make the deponent that party's witness. Specifically, Rule 4:7(c) provides, in part, that "[a] party does not make a person his own witness . . . by taking his deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition . . . ." The Rule, however, does not end there, further providing that "this [provision, making the deponent the party's witness,] shall not apply to the use by an adverse party of a deposition under subdivision (a)(3) of this Rule." In turn, Rule 4:7(a)(3), provides that "[t]he deposition of a party . . . may be used by an adverse party for any purpose."

Husband, of course, was an "adverse party" to wife in this proceeding. Thus, even if we were to assume that husband's second deposition had been introduced into evidence by wife,[7] it was done pursuant to Rule 4:7(a)(3), and thus, husband did not become wife's witness. As the Virginia Supreme Court has recognized,

> [r]eading [Rule 4:7(a)(3) and Rule 4:7(c)] together, Rule 4:7 clearly establishes that a party seeking to introduce deposition testimony of an adverse party will not suffer the consequences of making the deponent his own witness. This is the conclusion we reached in Horne v. Milgrim, 226 Va. [135,] 138 [(1983)], where the Court held that "Horne was entitled to rely on [the adverse party's] deposition without incurring the dangers inherent in making her his witness."

Thornton v. Glazer, 271 Va. 566, 572 (2006). Thus, husband's argument, wife "made [husband] her witness[,]" is without merit. Accordingly, we affirm the trial court's classification of the condominium as marital property and its award to wife of the equity in the condominium or the payment of $19,000, representing fifty percent of the down payment made by husband during the marriage.

## II. Husband's unilateral expenditure of marital funds

Husband admits that he unilaterally withdrew $60,000 from the parties' joint credit union account. He concedes that the money he withdrew was marital property and that he did not have the right to the funds independent of wife's interest in them. However, he argues that the trial

---

[7] At the conclusion of the December 15, 2017 hearing that the trial court had set to allow the parties to make "final argument," the trial court stated that "all of the *de bene esse* depositions will be marked and are now made a part of the record in this case." The record does not reveal which party offered the depositions as evidence. From the beginning of the hearing, both parties referenced the *de bene esse* depositions as if the depositions already were before the trial court with the first reference to husband's deposition testimony coming from his own counsel. Accordingly, the record only establishes that wife's counsel took husband's deposition on November 20, 2017, not that she offered the deposition into evidence. The failure of the record to establish which party offered the deposition into evidence provides an alternative ground for our conclusion that the trial court was not required to accept as true husband's testimony.

- 12 -

court erred in finding that the evidence did not establish that he spent all of the money on marital expenses, and therefore, also erred in ordering he reimburse wife for half of the funds he unilaterally withdrew.

The value of the admittedly joint credit union account and the propriety of husband's use of those funds represent questions of fact. Accordingly, we are bound by the trial court's conclusion regarding those funds unless it is plainly wrong or without evidence to support it. See generally David v. David, 64 Va. App. 216, 222 (2015).

Husband's argument regarding the funds is essentially the same argument that he made regarding the condominium. He contends that the only specific evidence as to how those particular marital funds were spent came from his testimony,[8] which, for the reasons noted above, he claims binds wife and ultimately the trial court. As such, he argues that the trial court was required to accept his testimony and find that all of the funds he took from the joint credit union account were spent on legitimate marital expenses.

As noted above, the trial court was not required to accept husband's testimony; it was free to reject it. The fact that husband surreptitiously and unilaterally withdrew the funds allowed the trial court to infer that he did so for an improper purpose. Nothing required the trial court to accept husband's story that he unilaterally withdrew the funds so that he could use them to pay marital expenses. This is especially so given his repeated surreptitious behavior and the fact that he would have been free to spend the funds on marital expenses if he had left them in the joint account. Accordingly, we cannot say that the trial court erred in ordering husband to reimburse wife for half of the funds he unilaterally withdrew from the joint credit union account.

---

[8] Wife testified that husband did continue to pay certain marital expenses after the date of separation; however, she was unable to testify that he used the withdrawn credit union funds for that purpose.

III. Trial court's award of spousal support

In reviewing a trial court's award of spousal support, we recognize that "a trial court has broad discretion which should not be interfered with by an appellate court unless it is clear that some injustice has been done." Joynes v. Payne, 36 Va. App. 401, 423 (2001) (quoting Papuchis v. Papuchis, 2 Va. App. 130, 133 (1986)). "Spousal support determinations typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." Brandau v. Brandau, 52 Va. App. 632, 641 (2008) (quoting McKee v. McKee, 52 Va. App. 482, 489 (2008) (*en banc*)).

Husband did not contest in the trial court and does not contest on appeal that wife is entitled to spousal support.[9] Furthermore, he does not dispute that the trial court arrived at the income figure it utilized by averaging his documented wage income for 2014 and 2015, the only years for which he produced tax returns. Rather, he argues that a proper review of all of the evidence inexorably leads to the conclusion that his income was lower than the figure determined by the trial court.

As with much of the financial evidence in the case, the evidence regarding husband's income comes largely from husband, whether through his tax returns or his testimony. He testified that his income had been decreasing each year since 2014. However, much of the evidence did not support that conclusion regarding his total income.

His 2014 tax return demonstrated his total income for that year was $188,744. His 2015 tax return demonstrated total income of $185,539, a decrease of slightly more than $3,000 from 2014. He testified that his total income for 2016 was $203,000, a significant increase over both 2014 and 2015. He also testified regarding what he anticipated earning in 2017, but he could not provide any definite figure.

---

[9] Husband does not argue on appeal that the trial court erred in the amount of the award if the trial court's calculation of his income is correct. He only challenges the award based on what he contends was an erroneous calculation of his income.

- 14 -

For the purposes of determining husband's income for spousal support, the trial court essentially averaged his wage income as reflected on the tax returns that had been provided, but it did not include husband's significant non-wage income or use figures that husband testified to but for which he lacked confirming documentation. Accordingly, it averaged the reported wage income for 2014 and 2015, determining husband's income for spousal support purposes to be $161,700 and made its spousal support award based on this figure.

"The issue of husband's income is a question of fact, and the judgment of the [trial] court on questions of fact is entitled to great weight and will not be disturbed unless it is plainly wrong or without evidence to support it." Patel v. Patel, 61 Va. App. 714, 727 (2013) (internal quotation marks and citation omitted). Thus, if there is a reasonable evidentiary basis for the trial court's determination of husband's income, we must affirm the spousal support award.

Having essentially conceded that the trial court's income figure is based on evidence in the record, husband still argues that the trial court's income determination is unreasonable. Specifically, he challenges the methodology the trial court used in determining his income for the purpose of making the support award. He argues that the trial court "erred in using an 'income averaging' method to determine [husband's] gross income[,]" contending that the trial court erred by calculating an average of his income when the years utilized in formulating the average did not include "the year in which the evidentiary hearing took place."

Husband cites no authority for his position. Given the length of some divorce proceedings, it is not unusual for spousal support awards to be made based on income figures that predate the entry of the decree. For example, in Patel, the trial court determined husband's income for the purposes of spousal support by adopting an expert's methodology that "used a three-year average [of husband's income], from 2008 to 2010[.]" 61 Va. App. at 727. We affirmed the income

determination and subsequent spousal support award even though the final decree of divorce implementing same was not entered until 2012. Id. at 719.

Here, the trial court made its determination of husband's income based on evidence in the record. It used the most current income information for which husband provided documentation. As fact finder, the trial court was not required to accept husband's uncorroborated testimony that his wage income had decreased in the intervening twenty-three months.[10] Because the trial court's income determination is supported by evidence in the record, we will not disturb that determination or the resulting award of spousal support to wife.

IV. Trial court's award of attorney's fees

"An award of attorney's fees to a party in a divorce suit is a matter for the exercise of the trial court's sound discretion after consideration of the circumstances and equities of the entire case." Gilman, 32 Va. App. at 124 (quoting Davis v. Davis, 8 Va. App. 12, 17 (1989)). "An abuse of discretion occurs only when reasonable jurists could not differ as to the proper decision." Wynnycky v. Kozel, 71 Va. App. 177, 193 (2019) (quoting Reston Hosp. Ctr., LLC v. Remley, 63 Va. App. 755, 764 (2014)). Accordingly, "the abuse of discretion standard 'necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable.'" Id. (quoting Hamad v. Hamad, 61 Va. App. 593, 607 (2013)). Thus, we will only reverse a trial court's award of attorney's fees if

---

[10] Underlying much of husband's criticism of the trial court's rulings is his argument that his testimony was sufficient to prove his case, and thus, the trial court erred in rejecting the portions of his testimony for which he did not have corroborating documentation. Although testimony that is accepted by the fact finder as true can provide a sufficient evidentiary basis even without corroborating documentation, a fact finder can reject such testimony from a witness it does not find credible. It is clear from its rulings that the trial court did not find husband credible regarding financial issues (i.e., condominium purchase, use of credit union funds, and his income).

no reasonable trial judge would have entered the award based on the facts and circumstances of the particular case.

Husband argues that the $20,000 award was not supported by sufficient evidence. He asserts that the only evidence was "an accounting of his attorney fees" submitted by wife's counsel that provides no detail "as to the itemization of the services rendered" and that the trial court "presum[ably] . . . based its award on that exhibit rather than considering all of the circumstances of the case."

We agree with husband that the fee affidavit submitted by wife's counsel is shocking in its lack of detail. It provides neither an itemization of services rendered nor an indication of counsel's hourly rate.[11] Rather, it is counsel's sworn statement that wife already had incurred $37,580.40 in fees and expenses and would likely incur an additional $1,200 in fees at the upcoming hearing. Standing alone, it provides little basis for the $38,780.40 fee award it seeks.

However, contrary to husband's assertion, it does not appear that the trial court gave counsel's affidavit much, if any, weight in determining the fee award. Rather, it appears that the trial court relied on other evidence in making the award.

In the affidavit, wife's counsel claimed that wife had incurred over $38,000 in fees and expenses. The trial court did not make such an award, but rather, cut the figure almost in half by awarding wife $20,000. In doing so, the trial court did not pull the number out of the air, but instead, relied on wife's sworn testimony at her November 2017 deposition that she had paid that amount in fees to date.

---

[11] The August 6, 2018 affidavit filed by wife's counsel does provide a basis for concluding that counsel charged per hour as opposed to a flat fee. After providing a statement of fees incurred to date, it provides an estimate of the fees that will be incurred at the yet-to-occur August 14, 2018 hearing. Such an estimate would be unnecessary in a flat-fee arrangement.

Accordingly, the amount awarded has at least some basis in the evidence, and we cannot say that the amount is shocking given the totality of the circumstances. The record reveals that, at the time of the final order in the trial court, the divorce proceedings had been ongoing for almost two years. Although the divorce ultimately was granted on the basis of separation for more than a year, both parties argued that they were entitled to a divorce on fault grounds. The record demonstrates that wife's counsel filed and responded to various motions, engaged in discovery, participated in multiple *de bene esse* depositions, attended numerous hearings, and engaged in settlement negotiations over that nearly two-year period. Although a more detailed evidentiary record regarding what counsel did and what he charged for doing it would have provided a vastly better record, we cannot say given all that the record does reveal that no reasonable trial court could have determined that wife was entitled to a $20,000 fee award. Accordingly, under the applicable standard of review, we affirm the trial court's award of attorney's fees to wife.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>

- 18 -